IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ANTHONY R. McGIVERY, )
)
Petitioner, )
)
v. ) Civil Action No. 3:10CV455-HEH
)
GENE JOHNSON, )
)
Respondent. )

## MEMORANDUM OPINION
(Denying 28 U.S.C. § 2254 Petition)

Anthony McGivery brings this petition for a writ of habeas corpus challenging his convictions in the Circuit Court for the City of Virginia Beach ("Circuit Court"). Respondent has moved to dismiss on the ground that the petition is barred by the relevant statute of limitations. McGivery has responded. The matter is ripe for disposition.

## I. PROCEDURAL HISTORY

On July 15, 1998, McGivery pled guilty to three counts of robbery, three counts of using a firearm in the commission of a felony, three counts of abduction, one count of grand larceny, two counts of conspiracy in violation of Virginia Code § 18.2-22, one count of abduction with intent to defile, and one count of forcible sodomy. During his plea proceedings, McGivery acknowledged that the Commonwealth's evidence would reflect the following:

> On December 21, 1997 during the early morning hours, Leon Cherry (age 17), Anthony McGivery (age 16) and Charles Ferguson (age 18) entered the home of the victim, Ms. Donna Peterson, located in the City of Virginia

Beach. They were wearing masks and two of the defendants were armed with a semi-automatic pistol and a rifle. As the defendants entered the home, Ms. Peterson was coming down the stairs from her second floor. The defendants forced Ms. Peterson to return to the second floor and provide them with the cash she had in he[r] purse. After taking the money they ripped the phone from the wall. The defendants then demanded more money from the victim. She indicated she had cash for Christmas presents on the first floor. The defendants then forced Ms. Peterson to the first floor where they took more than two hundred (200) dollars from a cabinet. The defendants then took the cordless phone and departed the residence by the front door. Before leaving, the defendants told the victim "Don't call the police, we know where you live."

On December 23, 1997, the same three masked gunmen entered the home of Jack and Rebecca Harker (ages 58 and 57 respectively)[. The] defendants awakened the victims and forced them from their beds with demands for money. Rebecca Harker was then separated from her husband and forced into other rooms of the home to identify possible locations of cash or valuables. During this time her husband, Jack Harker was being held at gunpoint in the master bedroom where he was beaten with the rifle and threatened with his life. Mrs. Harker was then taken by Anthony McGivery and Leon Cherry into a separate bedroom where she was forced to orally sodomize Leon Cherry while Anthony McGivery held a gun to her head. Anthony McGivery then said "throw her on the bed for me." Mrs. [Harker] then struggled free and ran to the bedroom where her husband was being held.

After almost two hours in the home, the defendants forced the Harkers into the greatroom of their home. Anthony McGivery and Charles Ferguson then started the Harkers['] car while Leon Cherry forced Mrs. Harker to orally sodomize him a second time while he held a gun to her head. Cherry then joined McGivery and Ferguson in the Harkers['] car which was then driven away by the defendants.

(Br. Supp. Mot. Dismiss Ex. 8.)

McGivery appealed to the Court of Appeals of Virginia.[1] On June 25, 1999, the Court of Appeals of Virginia denied McGivery's appeal. (Br. Supp. Mot. Dismiss Ex. 2;

---

[1] As part of his guilty plea, McGivery had preserved the right to challenge the denial of his motion to suppress his confession.

2

*McGivery v. Commonwealth*, No. 2833-98-1 (Va. Ct. App. June 25, 1999).) On October 28, 1999, a three-judge panel of the Court of Appeals denied McGivery's appeal. (Br. Supp. Mot. Dismiss Ex. 3; *McGivery*, No. 2833-98-1 (Va. Ct. App. June 25, 1999).) McGivery did not pursue an appeal to the Supreme Court of Virginia.

On November 21, 2000, McGivery filed a petition for a writ of habeas corpus with the Circuit Court. (Br. Supp. Mot. Dismiss Ex. 4.) The Circuit Court dismissed the petition. McGivery appealed that decision to the Supreme Court of Virginia. On August 1, 2001, the Supreme Court of Virginia refused McGivery's petition for appeal. (Br. Supp. Mot. Dismiss Ex. 7; *McGivery v. Young*, No. 011044 (Va. Aug. 1, 2001).).

Thereafter, between 2007 and 2009, McGivery submitted a number of motions and requests to vacate his convictions and sentence to the Circuit Court, which the Circuit Court denied.

On June 30, 2010, the Court received from McGivery a document he titled "MOTION FOR RELIEF FROM JUDGMENT UNDER RULE 60(b)." The Court then sent McGivery the forms for filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254. On September 6, 2010, McGivery mailed the present § 2254 Petition to this Court. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (concluding notice of appeal is deemed filed as of the date inmate placed it in the prison mail system.)

In his § 2254 Petition, McGivery contends that he is entitled to relief upon the following grounds:

| Claim 1 | Petitioner's rights under the Fifth[2] and Fourteenth[3] Amendments were violated when the state courts denied Petitioner an evidentiary hearing. |
|---|---|
| Claim 2 | Petitioner was denied the effective assistance of counsel because:<br>(a) Counsel did not like Petitioner.<br>(b) Counsel failed to obtain DNA testing and investigate the victim's statements. Counsel advised Petitioner to plead guilty even though he knew Petitioner did not commit all of the crimes with which he was charged. |
| Claim 3 | Petitioner's rights under the Fifth and Fourteenth Amendments were violated when Petitioner was charged with a sex crime and his DNA was not tested. |
| Claim 4 | The Circuit Court should have dismissed all of the charges against Petitioner when Petitioner's counsel expressed his dislike for Petitioner. |

## II. LIMITATIONS PERIOD FOR FEDERAL HABEAS RELIEF

The Antiterrorism and Effective Death Penalty Act ("AEDPA") amended 28 U.S.C. § 2244 to establish a one-year period of limitation for the filing of a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. The statute provides in pertinent part:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

[2] "No person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V.

[3] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

4

**(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

**(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

**(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

**(2)** The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

## III. ANALYSIS

McGivery's conviction became final, as that term is defined in 28 U.S.C. § 2244(d)(1)(A), on Monday, November 29, 1999, the last day to file a notice of appeal and pursue an appeal from the Court of Appeals of Virginia to the Supreme Court of Virginia. Va. Sup. Ct. R. 5:14(a) (West 1999). The limitation period began to run on November 30, 1999, and 357 days of the limitation period elapsed before McGivery filed his state petition for a writ of habeas corpus on November 21, 2000.

Under 28 U.S.C. § 2244(d)(2), the limitation was tolled from November 21, 2000 until August 1, 2001, when the Supreme Court of Virginia refused McGivery's petition for appeal from the Circuit Court's denial of McGivery's state petition for a writ of habeas corpus. At that point, McGivery had eight days or until August 9, 2001, to file his § 2254 Petition. Nevertheless, many more years elapsed before McGivery filed his

5

§ 2254 Petition in 2010. Therefore, the § 2254 Petition is barred by the statute of limitations unless McGivery demonstrates that he is entitled to a belated commencement of the limitation period under 28 U.S.C. § 2244(d)(1)(B)–(D) or equitable tolling.

Liberally construed, McGivery suggests that he is entitled to equitable tolling of the limitation period because he is actually innocent.[4] Neither the United States Supreme Court nor the United States Court of Appeals for the Fourth Circuit has decided whether a claim of actual innocence warrants tolling of the statute of limitations.[5] "Nevertheless, before addressing this difficult question, the Court should first consider whether [the petitioner] has made a sufficient showing of actual innocence." *Carter v. Virginia*, 3:09CV121-HEH, 2010 WL 331758, at *3 (E.D. Va. Jan. 26, 2010) (citing *Robinson v. Johnson*, No. 3:08cv00789, 2009 WL 2447939, at *3 (E.D. Va. Aug. 6, 2009)).

"Claims of actual innocence, whether presented as freestanding ones, *see Herrera v. Collins,* 506 U.S. 390, 417 (1993), or merely as gateways to excuse a procedural default, *see Schlup v. Delo,* 513 U.S. 298, 317 (1995), should not be granted casually." *Wilson v. Greene,* 155 F.3d 396, 404 (4th Cir. 1998) (additional parallel citations

---

[4] McGivery also vaguely suggests that his § 2254 Petition is timely because he "did not have certain documents." (§ 2254 Pet. 14.) Presumably, McGivery is referring to the affidavit of McGivery's codefendant, who now swears that McGivery is innocent. Because this affidavit does not constitute the factual predicate for any of the claims that McGivery is pressing in his § 2254 Petition, McGivery is not entitled to a belated commencement of the limitation period under 28 U.S.C. § 2244(d)(1)(D).

[5] The majority of Circuit Courts that have addressed the issue have concluded that a petitioner's actual innocence does not excuse the petitioner's failure to comply with the statute of limitations. *See Lee v. Lampert,* 610 F.3d 1125, 1134 (9th Cir. 2010) (citing cases).

omitted). Here, the Court reviews McGivery's claim under the more lenient standard for gateway claims set forth in *Schlup* because McGivery's actual innocence claim would allow the Court to consider his otherwise time-barred constitutional claims.

"[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schulp*, 513 U.S. at 327). "[A] gateway claim requires 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Id.* at 537 (quoting *Schulp*, 513 U.S. at 324). "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup*, 513 U.S. at 324. The Court then considers "'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.'" *House*, 547 U.S. at 538 (quoting *Schlup*, 513 U.S. at 327–28). The Court need not proceed to the second step of the inquiry unless the petitioner first supports his claim with evidence of the requisite quality. *Carter*, 2010 WL 331758, at *4 (citing *Weeks v. Bowersox*, 119 F.3d 1342, 1352-53 (8th Cir. 1997); *Feaster v. Beshears*, 56 F. Supp. 2d 600, 610 (D. Md. 1999)).

Here, McGivery's claim of actual innocence is founded on his own affidavit, an affidavit of his codefendant Leon Cherry, and a statement from his other codefendant,

7

Charles Ferguson. In his affidavit, Cherry swears, "Anthony had nothing to do with any crimes. He was young with no prior record which played a part in implicating him. We did not think that he would get in so much trouble. Again the truth is Anthony is innocent, he never took part in any robberies." (§ 2254 Pet. Cherry Aff.) McGivery also directs the Court's attention to a notarized statement from Charles Ferguson, which was filed in the Circuit Court. *See McCoy v. Robinson*, No. 3:08CV555, 2010 WL 3735128, at *2 (E.D. Va. Sept. 22, 2010) (observing that an unsworn notarized statement carries little evidentiary value). In that statement, Ferguson asserts that McGivery did not know anything about the robberies.

The Supreme Court has instructed that

> when considering an actual-innocence claim in the context of a request for an evidentiary hearing, the District Court need not "test the new evidence by a standard appropriate for deciding a motion for summary judgment," but rather may "consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence."

*House*, 547 U.S. at 537 (quoting *Schulp*, 513 U.S. at 331–32). Ferguson's and Cherry's statements were made only after the state charges related to the crimes against Mrs. Peterson and Mr. and Mrs. Harker were concluded and are thus "highly suspect." *Carter*, 2010 WL 331758, at *4 (citing *Drew v. Scott*, 28 F.3d 460, 463 (5th Cir. 1994); *United States v. Vergara*, 714 F.2d 21, 23 (5th Cir. 1983)). In his affidavit, McGivery asserts that he pled guilty because he was merely following the advice of counsel. McGivery's

8

current, unadorned professions of innocence are not credible given McGivery's testimony during his sentencing hearing:

> I would just like to say to Mrs. Peterson and the Harkers that I'm sorry for what I done; and I mean there's no explanation for it. I take full responsibility for my actions and the role that I played in it; and it was a horrible mistake; and right now I can't do nothing to turn back the hands of time, so the only thing I can do is pray and let God take control of it. I'm sorry for what I've done.

(Nov. 2, 1998 Tr. 25.)

> Prosecutor: Now, when you went into the home of the Petersons -- excuse me -- Mrs. Peterson's home, that was early in the morning; is that right?
> McGivery: Yes.
> Prosecutor: And you all were just out walking the streets?
> McGivery: Yes.
> Prosecutor: With weapons?
> McGivery: Yes.
> Prosecutor: Now, when you went into the Harkers' home two days later, you had the weapons again?
> McGivery: Yes.

(*Id.* at 27–28.)

> Prosecutor: Then you all went in the back bedroom? Remember that?
> McGivery: Yes.
> Prosecutor: And you took Mrs. Harker back there?
> McGivery: Yes.
> Prosecutor: And you held the gun to her while Leon sexually assaulted her?
> McGivery: For the first couple minutes. Yes.

(*Id.* at 28.) "It is difficult to see how a collateral attack based on the proposition that the petitioner's own trial testimony was a pack of lies has any prospect of success. Litigants must live with the stories that they tell under oath." *Escamilla v. Jungwirth*, 426 F.3d 868, 870 (7th Cir. 2005).

9

The current statements by Ferguson, Cherry, and McGivery are not "'trustworthy' and do[] not constitute 'reliable' evidence of innocence sufficient to support a claim of actual innocence." *Carter*, 2010 WL 331758, at *6 (quoting *Schulp,* 513 U.S. at 324). "To accept such commonplace declarations would ignore the Supreme Court's admonition that the quality of evidence necessary to support a claim of actual innocence 'is obviously unavailable in the vast majority of cases.'" *Id.* at *6 (quoting *Schlup*, 513 U.S. at 324); *see Calderon v. Thompson,* 523 U.S. 538, 559 (1998) (emphasizing that new reliable evidence of innocence is a "rarity"); *see also Carter*, 2010 WL 331758, at *8 ("'It is not unusual for one of two convicted accomplices to assume the entire fault and thus exculpate his codefendant by the filing of a recanting affidavit or other statement.'" (quoting *Drew v. State*, 743 S.W.2d 207, 228 (Tex. Crim. App. 1987))). Accordingly, McGivery is not entitled to equitable tolling. The action is barred by the statute of limitations.

The motion to dismiss (Dk. No. 12) will be GRANTED. The petition for a writ of habeas corpus will be DENIED. The action will be DISMISSED.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition

should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). No law or evidence suggests that McGivery is entitled to further consideration in this matter. The Court will deny McGivery a certificate of appealability.

An appropriate Order will accompany this Memorandum Opinion.

/s/
HENRY E. HUDSON
UNITED STATES DISTRICT JUDGE

Date: May 12, 2011
Richmond, Virginia